IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| MICHAEL T. HAYES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV04-620-S-EJL |
| | ) | |
| vs. | ) | **MEMORANDUM ORDER** |
| | ) | |
| RICK SMITH, Shoshone County Jail | ) | |
| Supervisor; and SCOTT GIBBS, | ) | |
| Shoshone County Jail's Physician's | ) | |
| Assistant, sued in their individual and | ) | |
| official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

Pending before the Court in this case are the following motions: Defendant Gibbs'
Joint Motion for Extension of Time to Complete Discovery (Docket No. 45); Defendant
Gibbs' Motion to Dismiss, Motion for Sanctions, Motion to Compel Depositions, and
Motion for Additional Time to Disclose Expert Opinions (Docket Nos. 46-1 to -4);
Plaintiff Hayes' Motion for Extension of Time to File Response (Docket No. 49);
Plaintiff Hayes' Motion to Compel and Motion for Protective Order (Docket Nos. 50-1
and 50-2); Defendant Gibbs' Second Motion for Summary Judgment (Docket No. 54);
and Defendant Gibbs' Motion to Strike Affidavit of Michael Hayes (Docket No. 59).
Having reviewed the record in this case, the Court finds that oral argument is
unnecessary.  Having considered the arguments of the parties in their motions, responses,
and replies, the Court enters the following Order.

**MEMORANDUM ORDER  1**

# I.

## DEFENDANT GIBBS' MOTION FOR SUMMARY JUDGMENT

Defendant Gibbs has filed a Second Motion for Summary Judgment (Docket No. 54), asserting that Plaintiff has failed to show that Gibbs was deliberately indifferent to his back pain.  The Court now considers the merits of the Motion.

## A.     Standard of Law

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the moving party bears the "initial burden of identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact."  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)).  If the moving party points to portions of the record demonstrating that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party.  To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there

is a genuine issue for trial."  Fed. R. Civ. P. 56; *see T.W. Electric Serv*., 809 F.2d at 630 (internal citation omitted).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party.  All inferences that can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party.  *T.W. Elec. Serv*., 809 F.2d at 630-31 (internal citation omitted).

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  The existence of a scintilla of evidence in support of the non-moving party's position is insufficient.  Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby*, 477 U.S. at 252

Plaintiff's claims in this case arise from a time period when he was a pretrial detainee at the Shoshone County Jail.  While a convicted inmate's challenge to the conditions of his confinement is properly brought under the Eighth Amendment, a pretrial detainee's challenge is properly brought under the Fourteenth Amendment. *Redman v. County of San Diego*, 942 F.2d 1435, 1440 (9th Cir.) (en banc), *cert. denied*, 502 U.S. 1074 (1991).  Regardless, the Eighth Amendment provides a minimum standard of care for determining a person's right to medical treatment as a pretrial detainee.  *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986).

**MEMORANDUM ORDER   3**

To prevail on an Eighth Amendment claim regarding prison medical care, Plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)).  The Supreme Court has opined that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.*

> The Ninth Circuit has defined a "serious medical need" in the following ways: failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain; . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 838 (1994).  Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim.  *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

**MEMORANDUM ORDER   4**

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Lab*, 622 F.2d 458, 460 (9th Cir. 1980). The Ninth Circuit recently clarified that if medical personnel have been "consistently responsive to [the inmate's] medical needs, and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," summary judgment in favor of the defendants is proper. *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

**B.     Facts**

1.     <u>Pre-Incarceration Medical History</u>

Plaintiff has a history of degenerative disc disease. He also has a history of potential addictive behavior regarding pain medication. As early as September 2001, Deb Elliott-Pearson, M.D., wrote Plaintiff a letter stating:

> You are on a pain contract. This means that you do not receive any more medication regardless of the circumstances, unless it is agreed to in advance. We have discussed this in the past, and the rules have not changed. If you take your medications at a rate higher than prescribed, you will run out. That will not result in my giving you more medication.

*Plaintiff's Medical Records* (Docket No. 58-2, at p. 47).

In March 2003, prior to Plaintiff's incarceration, Defendant Scott Gibbs, a Physician Assistant (PA), provided Plaintiff with medical care for his back problems when Gibbs was in private practice. At that time, Gibbs had referred Plaintiff to a medical doctor for an evaluation of his medical condition and treatment. A medical

**MEMORANDUM ORDER   5**

record of March 12, 2003, shows that Gibbs received a report from the referral doctor,

Scott Magnuson, M.D., recommending the following:

> I think that conservative medication management for his pain is appropriate. His hydrocodone is reasonable. Apparently he has had a recent DUI and I only have the patient's version of that. However, if the DUI conviction was solely on the basis of the hydrocodone, then he will need to have close F/U and documentation from functional standpoint they are doing well. We may also want to consider sending him to a psychologist for neuropsych testing while on the medications. If he demonstrates normal cognitive function on the medications and has been on a stable dose for quite some time, then I think he can safely drive and would be at a low risk for getting a DUI. However, the question remains whether the patient is actually taking the medications appropriately and maybe at the time of his DUI he may have taken more medications than allowed which could have led to those problems. In that scenario, one would have to consider whether he was just trying to treat his pain the best way he could and it was not truly addictive behavior. This is chronic pain and one could certainly argue that long-acting opiate medications would be better for him overall. However, if he was getting by on 2-4 of the hydrocodone q.d. then I think that is a reasonable solution. If patients start getting up to 5-6 tabs q.d., I think about going to a longer acting opiate medication.

*Plaintiff's Medical Records* (Docket No. 58-3, at p. 43). This report questions whether

Plaintiff has a problem with addictive behavior regarding his pain medication.


In August 2003, after Gibbs treated Plaintiff in private practice, Plaintiff was

treated by another medical provider and underwent surgery to alleviate hip and leg pain.

Just after Plaintiff's August 2003 surgery, Glen Keiper, M.D., noted in the post-operative

report:

> Patient exhibits drug-seeking behaviors – *i.e*., "Can you get me more pain meds. I just wanted some MS Contin 40s or Dillavidid 5s to get me through the next few weeks."

**MEMORANDUM ORDER**   6

*Plaintiff's Medical Records* (Docket No. 54-1, at p. 12).

On October 24, 2003, Kathy Robertson, F.P.N., noted that Plaintiff had been released from his post-op care and had returned to that clinic for chronic treatment. Robertson wrote the following plan:

> Continue on the pain med as listed above.  Instructed that over the next couple of months we need to start decreasing the amount of pain medication he is on because he is on a lot of pain medication and it doesn't seem like he should need to stay on this amount of pain medication since his surgery has been completed and should definitely be decreasing the amount of pain.

*Plaintiff's Medical Records* (Docket No. 54-1, at p. 13).

2.    Medical Care During Incarceration

On November 24, 2003, Plaintiff was first incarcerated as a pretrial detainee in the Shoshone County Jail as it relates to his current conviction.  On November 24, 2003, Plaintiff requested a medical appointment, and was assigned to see Scott Gibbs, who at that time provided contract medical care for the Jail.

On November 25, 2003, Plaintiff was seen by Gibbs.  Which medical tests Gibbs performed on Plaintiff during the visit, if any, are disputed, but not material, because Plaintiff has not shown that performance of the tests would have indicated a different course of medical treatment.  It is undisputed that Plaintiff reported to Gibbs that he had undergone back surgery approximately 60 days earlier, in mid-August 2003, and that he had been taking the following medications: Diazepam (Valium), Lortab (a hydrocodone

and acetaminophen compound that is a narcotic analgesic), Neurontin, Plaquenil,

Cyclbenzaprine (Flexaril), Lipitor, and Zoloft.

Knowing Plaintiff's history of degenerative disc disease, of the potential drug

addiction issue, of the recent surgery, and of Plaintiff's current medications, Defendant

Gibbs continued Plaintiff's Neurontin and other medications but provided for a reduction

of the dosage and tapering off of the narcotic drugs Lortabs and Diazepam, and approved

him for a second mattress.

There is no information in the record suggesting that Plaintiff complained to Gibbs

that the medications prescribed were resulting in increased pain *between* November 25,

2003, and December 16, 2003, when Gibbs next saw Plaintiff.

It is undisputed that Gibbs learned that Plaintiff's pain had increased *on* December

16, 2003.  At that time, Plaintiff was no longer taking Lortab.  As a result of Plaintiff's

complaints of increased pain and Gibbs' observation that Plaintiff's status seemed to have

worsened, Gibbs increased Plaintiff's Neurontin from twice a day to three times a day,

but Gibbs would not reinstate the narcotic medication.  Gibbs declares that the new

regimen of medications prescribed to Plaintiff were, in his medical opinion, an

appropriate course of treatment for Plaintiff.

After December 16, 2003, neither Plaintiff nor anyone else at the jail

communicated to Gibbs about the status of Plaintiff's medical treatment or pain

management.  *See Transcript of Plaintiff's Deposition* (Docket No. 54-1, Exhibit F).

Gibbs did not see Plaintiff for a medical visit after that date.

**MEMORANDUM ORDER  8**

C.    **Discussion**

Plaintiff must show that there is a genuine issue of material fact as to Gibbs'

deliberate indifference to a serious medical condition.  Deliberate indifference exists if

the medical provider knew of and disregarded a serious medical condition or if he had

been "aware of facts from which the inference could be drawn that a substantial risk of

harm exists," and actually drew such an inference.  *See Farmer v. Brennan,* 511 U.S. at

838.  Differences in judgment between an inmate and prison medical personnel regarding

appropriate medical diagnosis and treatment are not enough to establish a deliberate

indifference claim.  *See Sanchez v. Vild*, 891 F.2d at 242.

In this instance, Gibbs was aware of Plaintiff's mixed history of degenerative disc

disease and potential drug addiction.  Gibbs was aware that Plaintiff had recently

undergone surgery to alleviate some of his pain (apparently hip and leg pain).  Gibbs'

decision was in line with Kathy Robertson's recommendation that Plaintiff begin

decreasing his pain medication to determine the effectiveness of the surgery in alleviating

some of his pain.

There is nothing in the record to suggest that Gibbs was deliberately indifferent to

Plaintiff's back pain.  He was not required to rely solely on Plaintiff's pre-operative status

to  prescribe medication for Plaintiff, but he properly considered Plaintiff's post-operative

status.  Gibbs' observations and plans may be contrary to what Plaintiff wanted, but

reducing a patient's dependence on narcotic drugs under the circumstances is not

necessarily contrary to his best interest, as Plaintiff argues.  Rather, it is the judgment call

of the medical provider, and, as shown above, it appears that Dr. Keiper, Kathy Robertson, and Scott Gibbs all shared the same medical philosophy regarding Plaintiff's medications. Dr. Magnuson's report questions whether Plaintiff had unmanaged pain or a drug addiction problem, and so it is not necessarily supportive of Plaintiff's position, as he argues. Under these circumstances, the record does not support deliberate indifference.

Plaintiff argues that he told Gibbs that Neurontin would not be as effective for him personally unless it was prescribed with narcotic medications. Gibbs' goal was to change Plaintiff from a prescription narcotic pain medication to a prescription non-narcotic pain medication. Gibbs allowed the narcotic medication for a time, and then re-evaluated Plaintiff. Nothing in the records shows that Gibbs did not appropriately exercise his professional medical judgment under the circumstances.

Plaintiff's complaints amount to a disagreement with a medical professional as to what the proper course of treatment should be. Plaintiff has offered no medical opinion showing that Gibbs' plan to change Plaintiff's medications amounted to a deliberate indifference to his pain, or even malpractice, which will not support a constitutional claim.

Plaintiff admits that he is not currently receiving narcotic pain medication at the Idaho Department of Correction, but that he receives other pain medication "that allows [him] to function in a normal capacity." *Plaintiff's Affidavit*, at ¶ 18 (Docket No. 58-2).

**MEMORANDUM ORDER  10**

Therefore, the treatment Plaintiff received after Gibbs' treatment is also in line with the medical goals Gibbs had for Plaintiff.

There is no constitutional right for incarcerated persons to have narcotic medications, and there are no medical opinions in the file demonstrating that narcotic medications were the only proper course of treatment in this case. *See Mosley v. Thornton*, 2005 WL 1645781 (D. La. 2005) ("While the plaintiff may not have received the pain medications that he apparently wanted (Lortab, Tylox 6, and Flexeril), he was nevertheless provided with the same nonsteroidal anti-inflammatory medication used by millions of Americans, who, like plaintiff, suffer from degenerative disc disease."); *Douglas v. Stanwick*, 93 F.Supp. 2d 320 (D. N.Y. 2000) (plaintiff's complaints did not rise to a constitutional claim, where record did not show that doctor withheld narcotic medication for a culpable reason but based on her medical judgment); *Sanocki v. Reno*, 1998 WL 184460, at *4 (D. Kan 1998) (medical decision to provide different pain relief medication than that recommended by consulting surgeon did not represent cruel and unusual punishment).

Further, Plaintiff did not complain to Gibbs about severe pain (or at all) between November 24, 2003, and December 16, 2003, when Gibbs re-evaluated him. Therefore, Gibbs' first opportunity to determine the success of the new medication regimen was on December 16, 2003. At that time, Gibbs increased Plaintiff's Neurontin. After that, Plaintiff never complained to Gibbs or saw him again. Therefore, there is nothing in the record showing that Gibbs ignored or refused to treat Plaintiff's condition according to

**MEMORANDUM ORDER   11**

Gibbs' medical experience and knowledge.  Each time, Gibbs assessed the circumstance

and prescribed a different course of treatment to try to solve Plaintiff's pain problems.  As

in *Toguchi v. Chung*, Gibbs was "consistently responsive to [the inmate's] medical needs,

and there has been no showing that [he] had "subjective knowledge and conscious

disregard of a substantial risk of serious injury."  391 F.3d at 1061.

There is nothing in the record supporting Plaintiff's assertions that Gibbs had

anything to do with Plaintiff's medical care after December 16, 2003.  Therefore, there is

no genuine issue of material fact as to the time period beyond December 16, 2003.  Based

upon all of the foregoing, Gibbs in entitled to summary judgment.

## II.

## OTHER MOTIONS

**A.    Defendant Gibbs' Joint Motion for Extension of Time to Complete Discovery
(Docket No. 45)**

All parties stipulated that the date for completion of discovery and depositions

should be extended to April 1, 2006, due to Plaintiff's difficulty in obtaining his medical

records.  Good cause appearing, the Court shall grant the Motion.

**B.    Defendant Gibbs' Motion to Dismiss, Motion for Sanctions, Motion to Compel
Depositions, and Motion for Additional Time to Disclose Expert Opinions
(Docket Nos. 46-1 to -4)**

Defendant Gibbs complains that Plaintiff has not been cooperative in allowing

Gibbs' counsel to obtain his medical records.  This issue now appears moot with the

granting of Gibbs' Second Motion for Summary Judgment.  Sanctions do not appear

appropriate, because at least a part of the difficulty in obtaining Plaintiff's medical

records was due to his ignorance as to the proper procedures.  In addition, Plaintiff

appears to be indigent, and so a monetary sanction would not be feasible.  In any event,

Gibbs is entitled to dismissal of Plaintiff's claims on the merits.

**C.   Plaintiff Hayes' Motion for Extension of Time to File Response (Docket No. 49)**

Plaintiff requested an extension of time in which to file a response to Defendant

Gibbs' Motion to Dismiss.  Good cause appearing, the Motion shall be granted, and

Plaintiff's Response, filed March 15, 2006, is deemed timely and has been considered by

the Court.

**D.   Plaintiff's Motion to Compel and Motion for Protective Order (Docket Nos. 50-1 and 50-2)**

Plaintiff requests that he be given a copy of all of the medical records obtained by

Defendant and that he not be required to attend the second half of his deposition unless he

has all of the medical records.  Defendant represents that he has provided all medical

records to Plaintiff, and thus, this issue appears moot.  In addition, Plaintiff's request

regarding his deposition is moot, given the Court's ruling on Gibbs' Summary Judgment

Motion.

**E.   Defendant Gibbs' Motion to Strike Affidavit of Michael Hayes (Docket No. 59)**

The Court has considered Hayes' Affidavit insofar as the content would be

admissible at trial, and concludes that striking the Affidavit is unnecessary.  Clearly, some

**MEMORANDUM ORDER   13**

of the Affidavit's assertions are not admissible without a supporting medical opinion, which Plaintiff does not have.  Other parts of the Affidavit contain information within Hayes' personal knowledge.  Having considered those parts of the Affidavit that are admissible, the Court concludes that summary judgment in Gibbs' favor is warranted.

## III.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant Gibbs' Joint Motion for Extension of Time to Complete Discovery (Docket No. 45) is GRANTED.

IT IS FURTHER HEREBY ORDERED that Defendant Gibbs' Motion to Dismiss, Motion for Sanctions, Motion to Compel Depositions, and Motion for Additional Time to Disclose Expert Opinions (Docket Nos. 46-1 to -4) are MOOT.

IT IS FURTHER HEREBY ORDERED that Plaintiff Hayes' Motion for Extension of Time to File Response (Docket No. 49) is GRANTED.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion to Compel and Motion for Protective Order (Docket Nos. 50-1 and 50-2) are DENIED.

IT IS FURTHER HEREBY ORDERED that Defendant Gibbs' Second Motion for Summary Judgment (Docket No. 54) is GRANTED.  All of Plaintiff's claims against Defendant Gibbs are dismissed with prejudice.

IT IS FURTHER HEREBY ORDERED that Defendant Gibbs' Motion to Strike

Affidavit of Michael Hayes (Docket No. 59) is DENIED as set forth above.

DATED:  **June 8, 2006**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM ORDER   15**