IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL T. HAYES, ) | |
| ) | |
| Plaintiff, ) | Case No. CV04-620-S-EJL |
| ) | |
| vs. ) | **MEMORANDUM ORDER** |
| ) | |
| RICK SMITH, Shoshone County Jail ) | |
| Supervisor; and SCOTT GIBBS, ) | |
| Shoshone County Jail's Physician's ) | |
| Assistant, sued in their individual and ) | |
| official capacities, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

Pending before the court in this civil rights case is Defendant Rick Smith's Motion for Summary Judgment (Docket No. 69). The Motion is fully briefed. Having reviewed the record in this case, and having considered the parties' arguments, the Court concludes that oral argument is unnecessary. Accordingly, the Court enters the following Order.

### MOTION FOR SUMMARY JUDGMENT

**A.    Standard of Law**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

**MEMORANDUM ORDER  1**

judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the moving party bears the "initial burden of identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)).  If the moving party points to portions of the record demonstrating that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party.  To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56; *see T.W. Electric Serv.*, 809 F.2d at 630 (internal citation omitted).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party.  All inferences that can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party.  *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477

**MEMORANDUM ORDER   2**

U.S. at 322. The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

Plaintiff bring his claims under 42 U.S.C. § 1983, the civil rights statute. To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Plaintiff alleges that he received inadequate medical care at the Shoshone County Jail. To prevail on an Eighth Amendment claim regarding prison medical care, Plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). The Supreme Court has opined that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.*

> The Ninth Circuit has defined a "serious medical need" in the following ways:
>
> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain; . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

**MEMORANDUM ORDER   3**

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 838 (1994). Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. at 104-05.

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Lab*, 622 F.2d 458, 460 (9th Cir. 1980). A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990). If the defendants are able to show that medical personnel have been "consistently responsive to [the inmate's] medical needs, and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," a plaintiff's claims may be dismissed by summary judgment prior to trial. *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

**MEMORANDUM ORDER   4**

B.  **Background Facts**

Plaintiff was an inmate at the Shoshone County Jail beginning on November 24, 2003. At that time, Plaintiff was awaiting sentencing on a state court conviction. Rick Smith was the jail supervisor and Scott Gibbs was a contracted physician's assistant (P.A.) at the jail. Plaintiff alleges that upon booking, he provided Defendant Smith with an itemized list of his current prescription medications. *See Complaint*, at p. 3 (Docket No. 1). Defendant P.A. Gibbs saw Plaintiff on November 25, 2003, and reviewed his medications. Gibbs describes this visit as follows:

> Mr. Hayes indicated that he had undergone back surgery in mid-August 2003, [and] he demanded that all of his prescriptions be refilled and demanded that he be provided a second mattress. He reported that his medications were Diazepam (Valium), Lortab (a hydrocodone and acetaminophen compound), Neurontin, Plaquenil, cyclbenzaprine (Flexaril), Lipitor and Zoloft. I advised Mr. Hayes that I would be tapering him off of the Lortabs and that I would be reducing the diazepam from three times a day to twice a day. I continued Mr. Hayes on Neurontin, which is a non-narcotic pain medication, and I approved him for use of a second mattress.

*Affidavit of Scott Gibbs*, at ¶ 9 (Docket No. 54-3).

On December 15, 2003, Plaintiff made a written request to see a doctor. On December 16, 2003, Plaintiff was seen again by P.A. Gibbs, who reviewed Plaintiff's medications. At that time, Plaintiff complained of back pain and had been completely tapered off the Lortab. Gibbs increased the Neurontin pain medication from twice to three times daily. *See id.* at ¶ 10.

Plaintiff alleges that Gibbs told him during one of the visits that there was a "no narcotics" policy at the jail, but that narcotic drugs were allowable on a case-by-case

**MEMORANDUM ORDER - 5**

basis. Plaintiff also alleges that Defendant Gibbs told him that Defendant Smith "was of the opinion that Diazepam and Hydrocodone [were] not necessary and ordered Defendant Gibbs to prescribe a non-narcotic substitute pain reliever." *Complaint*, at p. 7. Plaintiff alleges that he submitted an inmate complaint to Defendant Smith, asking that his narcotic prescription medications be reinstated because his pain was too intense and notifying Smith that he could not do his prescribed therapeutic exercises without the narcotic medications.

In December 2003, Plaintiff alleges that he had the following interaction with Defendant Smith:

> Defendant Rick Smith upon receiving the Plaintiff's complaint . . . , visited the Plaintiff at his cell and verbally denied the Plaintiff's request to be reinstated on his Diazepam and Hydrocodone (Lorcet). Defendant Smith did state that the jail is generally narcotic free. However, Defendant Smith did acknowledge that there are occasions whereas in exceptional circumstances the non-narcotic drug policy is relaxed. But, in the Plaintiff's circumstances th[ere] has been no showing of any existing circumstances to warrant an exception. And that Defendant Smith was not going to permit the Plaintiff to lay around the jail "high all day."

*Complaint*, at p. 8; *see also Affidavit of William LaClair, attached to Plaintiff's Statement of Undisputed Facts, at Exhibit 3* (Docket No. 78). On January 16, 2004, Plaintiff filed a complaint with the Sheriff, stating that Defendants Gibbs and Smith had taken him off his pain medication. The response was "all medical complaints are to be directed to the administrator of the jail." *See Plaintiff's Statement of Undisputed Facts, Exhibit 2* (Docket No. 78).

**MEMORANDUM ORDER - 6**

Plaintiff alleges that he "asked Smith for help getting medical treatment several times and was always denied any assistance in getting a doctor a real M.D. to see and treat Plaintiff" [sic]. *Plaintiff's Statement of Disputed Facts*, at ¶ 12 (Docket No. 78). Plaintiff also alleges: "Smith was asked to get Medical Treatment for Plaintiff several times. Between December 16, 2003 and April 5, 2004. Smith refused to have a doctor come to the jail and treat Plaintiff" [sic]. *Id*. There are no written requests of this nature in the record for the time period between December 16, 2003 and April 5, 2004.

Plaintiff also states that, during this time period, he did *not* make any further requests to see P.A. Gibbs, because he wanted to see a "real M.D." and not a physician's assistant. *Plaintiff's Second Affidavit*, at ¶ 3 (Docket No. 77-2); *Plaintiff's First Affidavit*, at ¶ 16 (Docket No. 58). Plaintiff states that he saw no medical provider during that time period, but he continued to receive the medications prescribed by P.A. Gibbs. *Plaintiff's First Affidavit*, at ¶ 18 (Docket No. 58). Plaintiff was transferred into the custody of the Idaho Department of Correction (IDOC) on or about April 5, 2004.

C.   **Discussion of Individual Capacity Claims**

Defendant Rick Smith asserts entitlement to qualified immunity in his summary judgment motion on the individual capacity claims asserted against him. The threshold question the Court resolves prior to undertaking a qualified immunity analysis is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated plaintiff's constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 200, 201 (2001). Because the Court answers this question in the negative,

**MEMORANDUM ORDER   7**

finding that the facts alleged do not show that Defendant Smith's conduct violated Plaintiff's Eighth Amendment right to medical care, the Court does not undertake a full qualified immunity analysis.

The Court has already determined that Defendant Scott Gibbs was not deliberately indifferent to Plaintiff's serious health needs when he reduced and then removed the narcotic pain medications from Plaintiff's health care regimen. The Court incorporates by reference its Order of June 8, 2006 (Docket No. 62). P.A. Gibbs' decision comports with several other prior health care providers who had concerns about Plaintiff having a painkiller addiction, including Deb Elliott-Pearson, M.D., Glen Keiper, M.D., and Kathy Robertson, F.P.N. *See Order of June 8, 2006*, at pp. 6-7. Similarly, after Plaintiff was transferred into the custody of the IDOC, he again was placed on non-narcotic pain medication, which he admitted was adequate. *See Affidavit of Plaintiff*, at ¶ 18 (Docket No. 58-2).

In sum, no deliberate indifference is manifested by P.A. Gibbs' actions that were motivated by legitimate concerns about Plaintiff's addiction to painkillers. *See Mosley v. Thornton*, 2005 WL 1645781, at *4 (D. La. 2005) ("while the plaintiff may not have received the pain medications that he apparently wanted (Lortab, Tylox 6 and Flexaril), he was nevertheless provided with the same non-steroidal anti-inflammatory medication used by millions of Americans, who, like plaintiff, suffer from degenerative disk disease

**MEMORANDUM ORDER   8**

and arthritis."); *Goodson v. Brown*, 2005 WL 1026186, at *4 (D. Tex. 2005).[1]

Here, P.A. Gibbs exercised his professional medical judgment in reducing the narcotic pain medication and eventually weaning Plaintiff from the medication altogether. Plaintiff did not complain of ineffective pain medication until approximately one month after Defendant Gibbs began this process. The second and last time Gibbs saw Plaintiff, he did not ignore Plaintiff's complaints of pain, but changed his medications and increased the amount of non-narcotic pain medication prescribed to Plaintiff to try to manage his pain.

Turning to the allegations against Defendant Smith, the Court notes that it is inappropriate for prison officials to interfere with appropriate medical treatment that has been prescribed by medical professionals, where such interference amounts to deliberate indifference to a serious medical condition. As set forth above, the records of several health care providers prior to P.A. Gibbs noted concerns about painkiller addiction, providing support for the medical course of action taken by Gibbs and allegedly

---

[1] In *Goodson v. Brown*, the Court reasoned:
  In this case, Goodson's testimony and the medical records show that Dr. Browne was not deliberately indifferent to his serious medical needs. He routinely complained of pain and was routinely ordered pain medications. While he could not get the pain medications that he specifically requested, Darvocet, Vicodin and Soma, these are narcotics and thus not provided in jail, according to Nurse Alexander's testimony. Xanax is not a narcotic but it is a psychotropic medication and thus also not available. . . . The fact that these medications were not as effective as Goodson would have liked does not set out a constitutional violation; there is no constitutional right to a non-existent miracle cure. *Cf. Bailey v. Gardebring*, 940 F.2d 1150, 1155 (8th Cir. 1991).
2005 WL 1026186, at *4.

**MEMORANDUM ORDER   9**

recommended by Smith in Plaintiff's case.  Therefore, even if Defendant Smith, who has no medical training, suggested that Plaintiff be taken off of his narcotic medication, that opinion is consistent with the independent opinions of the medical providers.  There is insufficient evidence showing that Gibbs changed Plaintiff's medications because he felt unduly influenced by Smith rather than as a result of his own medical judgment.[2]  Accordingly, Plaintiff has not shown that there is a causal link[3] between his allegation that Defendant Smith suggested that he be taken off the narcotic pain medication and the medical provider's action in taking him off the medication and providing other pain medication.

As to the period of time between December 16, 2003, and April 5, 2004, when Plaintiff alleges that he did not see any other medical providers at the jail, Plaintiff has failed to show that Defendant Smith caused the nontreatment.  Plaintiff has admitted that he refused to see P.A. Gibbs after December 16, 2003.  *Plaintiff's First Affidavit*, at ¶ 16

---

[2]  Scott Gibbs declared that the medications he prescribed "were, in my opinion, the proper course of treatment to address Mr. Hayes' complaints of back pain, as well as his other medical conditions.  In addition, over the counter pain medicines, such as Tylenol (acetaminophen) and ibuprofen were available at the jail for the inmates." *Affidavit of Scott Gibbs*, at ¶ 11 (Docket No. 54-3).

[3]  An essential element of a § 1983 case is that the plaintiff show that the defendant's actions *caused* the deprivation of a constitutional right.  42 U.S.C. § 1983; *Arnold v. International Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).  "The causation requirement of § 1983 . . . is not satisfied by a showing of mere causation in fact[;] [r]ather, the plaintiff must establish proximate or legal causation." *Id*.  The Ninth Circuit has explained: "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivations of which he complains." *Id*. (internal citation omitted).

**MEMORANDUM ORDER   10**

(Docket No. 58).  Plaintiff alleges that he asked Smith several times if he could see "a doctor, a real M.D.," between December 16, 2003, and April 5, 2004.  No such written requests exist in the record.  For purposes of summary judgment, the Court accepts as true the allegation that Plaintiff made these requests.

Plaintiff's particular allegation is that Defendant Smith was deliberately indifferent to Plaintiff's serious medical condition "when he refused to contact one of the jail's doctors and have the M.D. treat Plaintiff's serious medical needs."  *Statement of Undisputed Facts*, at ¶ 1 (Docket No. 78).  It is undisputed that P.A. Gibbs was available to see Plaintiff for his back pain.  Plaintiff is not entitled to select the medical care provider of his choice in jail.  *See Mosley*, 2005 WL 1645781, at *4 ("[T]he fact that plaintiff was seen and treated by nurses rather than a physician does not implicate the constitution."); *Callaway v. Smith County*, 991 F.Supp. 801, 809 (D. Tex. 1998) (same).

Plaintiff admits that he refused to consult with P.A. Gibbs, who had the expertise to determine whether additional medical care or consultation with a doctor was necessary.  Plaintiff's failure to allow P.A. Gibbs to further assess and change his medications to manage his pain is the result of Plaintiff's own decision, not Smith's alleged refusal to allow him to see "a real M.D." instead of a physician's assistant.  Plaintiff continued to receive the medications prescribed by P.A. Gibbs until he arrived at the IDOC facility in April 2004.  *Plaintiff's First Affidavit*, at ¶ 18 (Docket No. 58).  As a result of all of the foregoing, Defendant Smith is entitled to summary judgment on Plaintiff's individual capacity claims against him.

**MEMORANDUM ORDER   11**

**D.     Discussion of Official Capacity Claims**

Defendant characterizes Plaintiff's official capacity claims against Defendant Smith as a claim against Shoshone County. The law is clear that a local governmental entity may not be sued except where it is alleged that the execution of a government's policy or custom inflicted the injury of which Plaintiff complains. *Monell v. Dept. of Soc. Serv. of New York*, 436 U.S. 658, 694 (1978). That is, "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). There is no respondeat superior liability under § 1983. *Id.* Requisite elements of a § 1983 claim against a municipality are the following: (1) the plaintiff was deprived of a constitutional right; (2) the county had a policy; (3) the policy amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation. *Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001) (citing *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (internal quotation marks omitted)).

Plaintiff alleges that Shoshone County had a policy of not prescribing narcotic drugs in its facility, and it had an exception to that policy, which was that narcotic medication could be provided according to an individual inmate's particular medical needs. *Complaint*, at p. 8. If the Court assumes that there was such a policy, Plaintiff has not shown that the policy, or Smith's actions under the policy, amounted to deliberate indifference in his case. As explained above, Plaintiff's prior and subsequent medical

**MEMORANDUM ORDER    12**

treatment shows that weaning Plaintiff from his narcotic pain medication was appropriate and not the result of deliberate indifference.  As a result, Defendant is also entitled to summary judgment on the official capacity claims.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant Rick Smith's Motion for Summary Judgment (Docket No. 69) is GRANTED.  Plaintiff's case is DISMISSED with prejudice.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion for an Order to enter into a Settlement Conference (Docket No. 79) is MOOT.

DATED:  **August 21, 2007**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM ORDER   13**